UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GIONNI DEWS,<br><br>Defendant. | Case No. 1:22-CR-015<br><br>Judge McFarland<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

## INTRODUCTION

Gionni Dews, a felon who was on probation, illegally possessed a machine gun, which he brought with him, loaded, to his job at an IHOP. For the reasons that follow, the government respectfully requests that the Court sentence Dews to 37 months' imprisonment, two years' supervised release, and a $100 special assessment.

## BACKGROUND

On November 26, 2021, Gionni Dews, who was on probation after being convicted of Carrying a Concealed Weapon, was working at the IHOP on Marburg Avenue in Oakley. Unbeknownst to his coworkers, tucked away on his person, Dews had hidden a Glock pistol that had been illegally converted into a machine gun with a device called an auto sear. That machine gun was loaded with at least twenty-four rounds of 9 mm ammunition.

At some point that evening, Dews got into a physical altercation with a coworker. The coworker threw pancakes at Dews, and Dews slapped the coworker. After the altercation, Dews walked off the job, waiting outside IHOP to wait for a friend to pick him up.

About fifteen minutes after the initial altercation, an adult male confronted Dews and started shooting at him with a firearm. (It appears that the assailant was the boyfriend of the worker whom Dews had slapped.) Dews ran away, and while doing so he pulled out his machine gun and shot back toward the other man—more than 20 rounds in rapid succession. Some of these rounds hit the IHOP, terrifying diners inside.

At around the same time, Dews's associate arrived in an SUV, and Dews ran to the vehicle. Dews and two other men in the vehicle then led police on a high-speed chase toward I-71 South. Police immediately pursued with flashing lights, but the vehicle did not stop. The SUV got off the expressway at the Dana Avenue exit, and, as it was approaching the Wasson Way overpass, made what appeared to be a deliberate swerve to the right, hitting the guard rail. At the same time, Dews threw the machine gun, which was still loaded with four rounds and one in the chamber, out of the passenger window, near the backyards of a tightly packed row of homes on Floral and Morton Avenues as well as the Burwood Playground. The map below shows the relevant area, with a red star marking the approximate location where the machine gun was recovered:



The high-speed chase continued until the SUV reached the University of Cincinnati Medical Center, where Dews was treated for a bullet wound in his leg.

## APPLICABLE LAW

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Then, "the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a)." *Id.* at 49-50. These include (1) the nature and circumstances of the offense and the history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to

3

protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). The Court should impose a sentence sufficient but not greater than necessary to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

## ARGUMENT

### A. The Guidelines Calculation.

The government agrees with the Guidelines calculation set forth in the PSR with one exception. Specifically, the government respectfully submits that a two-level enhancement should apply because the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. This enhancement is appropriate where the government shows:

> that the defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*United States v. Woods*, 604 F.3d 286, 292-93 (6th Cir. 2010) (citation omitted).

A defendant's conduct is "reckless" if "the defendant was aware of the risk . . . and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. n.1; U.S.S.G. § 3C1.2 cmt. n. 2. And the Sixth Circuit affords district courts "significant deference" when reviewing the "highly fact-based" question of whether a defendant's actions constituted reckless endangerment. *Id.* at 293 (quoting *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005)).

4

In its objections to the PSR, submitted to the Probation Officer, the government argued that this enhancement should apply because a preponderance of the evidence showed that Dews was an "active participant" in the high-speed chase that immediately followed the shootout at the IHOP. (*See* PSR at 24-25 (Objection Letter).) The government incorporates that argument by reference here.

Upon further consideration, however, the government respectfully submits that the Court can more easily conclude that this enhancement is appropriate for a different reason: because Dews, while fleeing, threw a loaded machine gun out of the SUV's window in a location where anyone could have found it and hurt themselves or others—specifically, in the backyards of a row of houses, near a popular walking and biking path, and near a playground.

In *United States v. May*, 430 F. App'x 520 (6th Cir. 2011), the Sixth Circuit affirmed the district court's application of the § 3C1.2 enhancement where the defendant discarded a loaded firearm in an area where "pedestrian traffic" was likely. *Id.* at 526. The court explained that, "because it was possible that someone, whether an adult or child, would recover and discharge the firearm, [the defendant] created a *risk* of death or serious bodily injury" that was "substantial." *Id.* at 526 (emphasis in original). The court also noted that, in prior cases, the Sixth Circuit had previously found "no persuasive argument to hold that the risk created by throwing a loaded gun near other people is not 'substantial,' even when it is done in front of police officers and with no children present." *Id.* (internal quotations omitted) (citing *United States v. Howard*, 301 F. App'x 446, 449 (6th Cir. 2008) (applying the reckless-endangerment enhancement where the defendant "[threw] a loaded and cocked gun on the ground near police while fleeing"); *United States v. Allen*, 51 F.3d 273, 1995 WL 140837, at *4 (6th Cir. 1995)

(unpublished) (holding that discarding a gun, whether loaded or unloaded, in an area where it could easily be recovered was reckless endangerment)).

The *May* court noted that it was "not alone" in reaching this conclusion: "Other circuits have held that 'simply leaving a loaded weapon in a public place' can warrant the enhancement." *May* 450 F. App'x at 527 (citing *United States v. Rogers*, 423 F. App'x 636, 640 (7th Cir. 2011) (unpublished) ("[H]e discarded a loaded revolver in a residential neighborhood at night, creating a substantial risk that someone would find it and get hurt."); *United States v. Lard*, 327 F.3d 551, 553 (7th Cir. 2003) (noting that discarding a weapon can amount to reckless endangerment when it is accessible by other people); *United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003) (concluding that the record "fully supported" the district court's application of the enhancement where the defendant discarded a loaded gun in an area where children could find it); *United States v. Jefferson*, 58 F. App'x 8, 10 (4th Cir. 2003) (affirming the application of this enhancement where the defendant discarded a loaded gun; "had the officers not found the gun, it would have constituted a substantial risk of injury to the community")); *see also United States v. Slaughter*, 386 F.3d 401, 404 (2d Cir. 2004) (applying this enhancement where the defendant threw a loaded handgun in an area where children were playing).

Opinions issued since *May*—including another Sixth Circuit case—have reached the same conclusion. *See, e.g.*, *United States v. Tasaki*, 510 F. App'x 441, 445 (6th Cir. 2013) (affirming the application of this enhancement where the defendant discarded a gun "in a residential neighborhood," creating a substantial risk of injury to anyone who might find the firearm); *United States v. Vega-Rivera*, 866 F.3d 14, 20 (1st Cir. 2017) (affirming the application of this enhancement where the defendant, among other things, "threw [a] gun into a

6

public parking lot where pedestrians were sure to frequent," which "could have very well resulted in substantial injury to others").

In light of the many cases holding that discarding a loaded firearm recklessly creates a risk of substantial injury to others, the government respectfully submits that the Court should apply the enhancement here. As police, with their lights flashing, chased the SUV Dews was in, the SUV made what appeared to be a deliberate swerve to the right side of the Dana Avenue exit. At the same time as the SUV swerved, Dews threw a machine gun out of the passenger window—suggesting he had specifically asked the driver to swerve toward the guard rail. The machine gun was loaded with four rounds, including one in the chamber, and it landed near the Wasson Way overpass—a popular walking and biking route. The area where the machine gun landed was also near the backyards of a row of homes on Floral and Morton Avenues, as well as the Burwood Playground. Thus, in this case, as in the cases described above, Dews discarded a loaded firearm in a place where it could easily have been found and discharged by someone else—potentially even a child—creating substantial risk of death or serious bodily injury to another person. Accordingly, a two-point enhancement should apply, and Dews's Guidelines range should be 41 to 51 months' imprisonment, rather than 37-46 months.

### B. A consideration of the § 3553(a) factors shows that a sentence of 37 months is appropriate here.

The nature and circumstances of this offense weigh in favor of a substantial period of incarceration. Despite having a prior felony conviction that prevented him from possessing a firearm—a 2019 conviction for Carrying Concealed Weapons—and despite still being on probation, Dews went out and bought a firearm. The firearm was not a hunting rifle or even a handgun: It was a fully automatic machine gun, which was illegal for anyone to own. To make matters worse, Dews did not "merely" possess the machine gun in a locked gun safe at home;

he brought it with him, loaded with at least 24 rounds of ammunition, to work at a public restaurant. Regardless of whether he planned to use the machine gun that night, the mere fact that Dews had it on his person, and that it was loaded, created the risk that the firearm would be used and that someone would be seriously injured or killed. And then, after the shootout at the IHOP, Dews—without even bothering to unload the machine gun first, and with the clear intention of avoiding being caught with it—recklessly threw it out of his car window, right next to a popular walking and biking path, into the backyards of a row of houses, near a playground. A significant term of imprisonment is necessary to reflect the seriousness of this offense and to deter Dews and others from attempting to possess deadly machine guns.

 Aspects of Dews's history and characteristics also show that a substantial term of imprisonment is warranted here. First, as noted, Dews was on probation for Carrying Concealed Weapons when he committed another firearms offense. And the PSR describes multiple probation violations from throughout 2019, when Dews was on probation for other offenses. These probation violations suggest that Dews cannot be trusted to abide by conditions of release and that a term of imprisonment is necessary to protect the public from further crimes by Dews.

 Nevertheless, there are certain mitigating circumstances in this case that the government believes weigh in favor of a term of imprisonment of 37 months. The first is that, when Dews shot the machine gun on November 26, 2021, he appears to have done so in self-defense. Although Dews should not have slapped his IHOP coworker during their altercation, any slap was plainly no justification for the coworker's associate attempting to shoot and kill Dews. And although Dews appears to have fired shots toward the IHOP, these actions are arguably

mitigated by the fact that he had already been shot in the leg and likely believed that the only way to escape was to disable the assailant.[1]

Also weighing in favor of a sentence at the low end of the Guidelines are aspects of Dews's personal and medical history. For privacy reasons, the government does not summarize this history in detail in this public filing; however, the government notes that the PSR sets out certain diagnoses and treatments related to Dews's mental and emotional health, which stretch back to when he was just five years old. The defendant's struggles with mental health likely contributed to the behavioral issues he exhibited as a child, as well as his difficulties complying with the conditions of his probation. With adequate mental health treatment, which he could receive while on supervised release, Dews may be less likely to reoffend—and this may weigh in favor of a relatively shorter prison term with a longer term of supervised release.

Finally, the government notes that Dews's relative youth and relatively limited criminal history suggest that a sentence of 37 months may be sufficient to deter Dews from further criminal conduct. Dews has only one prior felony offense, and it appears that, aside from his pretrial detention on this case, he has never served more than 69 days in custody. A sentence of 37 months would be more than fifteen times longer than Dews has ever served before, and would therefore represent a significantly increased punishment compared to what he has faced in the past.

---

[1] To be clear, if Dews had not been acting in self-defense, a four-level enhancement under § 2K2.1(b)(6)(B) would have applied—so the fact that Dews was acting in self-defense is already factored into the Guidelines calculation. Nevertheless, the government respectfully submits that the fact that Dews was not the aggressor in the shootout weighs in favor of a lower sentence than would otherwise be appropriate.

For the foregoing reasons, the government respectfully submits that a sentence of 37 months' imprisonment, followed by two years of supervised release, is sufficient, but not greater than necessary, to meet the goals of sentencing in this case. A sentence of more than three years would reflect the seriousness of illegally possessing a machine gun, while a sentence slightly below the Guidelines range (as calculated with the 2-level enhancement for reckless endangerment) would adequately reflect the mitigating circumstances present here, including Dews's struggles with mental health.

## CONCLUSION

For the reasons given above, the government respectfully requests that the Court sentence Dews to 37 months' probation, three years' supervised release, and a $100 special assessment.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/Julie D. Garcia*
JULIE D. GARCIA (CA 288624)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Phone: (513) 684-3711

10